## Charles Carney, Appellee, v. Donk Brothers Coal & Coke Company, Appellant.

1. ANIMALS—*what sufficient to entitle recovery where injuries result from vicious.* In order to recover for injuries suffered from the kicking of an animal, it is sufficient to show that the disposition of such animal was to kick, and need not be confined to a particular circumstance of its kicking.

2. INSTRUCTIONS—*confined to issues.* An instruction which does not coincide with the issues and is calculated to mislead is properly refused.

3. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse if its contents are substantially contained in another instruction given.

4. INSTRUCTIONS—*ignoring counts.* An instruction which concludes with a direction to find for the defendant, is properly refused if it is

applicable to but two of the counts of the plaintiff's declaration and not to others.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. W. E. Hadley, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911. Rehearing denied April 3, 1912.

Wise, Keefe & Wheeler, for appellant; Mastin & Sherlock, of counsel.

Terry & Gueltig, for appellee.

Mr. Justice McBride delivered the opinion of the court.

A trial of this cause was had in the Madison County Circuit Court on May 24, 1910, resulting in a verdict for appellee for $800.

Appellant's motion for a new trial was overruled and judgment rendered upon the verdict, and from this judgment appellant prosecutes this appeal.

The declaration in this case consists of five counts. The first count alleges that on January 10, 1910, plaintiff was in the employ of the defendant, engaged in feeding and taking care of mules in the defendant's stable in this mine; that it was the duty of the defendant when an unsafe and vicious mule was placed under the plaintiff's charge, to inform the plaintiff of such vicious propensities; that the defendant brought to its mine two mules to be placed in charge of the plaintiff, which mules were unsafe and vicious, and would, without provocation, kick and injure persons coming near them, which condition defendant knew or by the exercise of ordinary care should have known, but which condition plaintiff did not know and was not informed by defendant; that while plaintiff was discharging his duties and caring for said mules, exercising due care and caution for his own safety, both of said mules kicked the plaintiff, whereby his left leg was broken and his right side bruised and injured, etc.

The first amended count avers that he was engaged

at work for defendant in caring for its mules and that it was the duty of the defendant to exercise reasonable care to furnish plaintiff a reasonably safe place in which to do his work. That defendant negligently furnished to plaintiff a place which was unsafe and dangerous, in this, that defendant caused to be placed in said stable an unsafe mule called Old Stud, which fact plaintiff did not know but which was known to the defendant, or by the exercise of ordinary care should have been known to it; that while plaintiff was engaged in the performance of his duties, exercising due care he was kicked by such mule and his leg broken.

The second amended count was substantially the same as the first, except that it alleges that the defendant caused to be placed in said stable an unsafe mule called New Mule, which plaintiff did not know, and which was known to the defendant, or should have been known to it by the exercise of ordinary care; and while plaintiff was performing his duty, exercising due care, he was kicked by said mule.

The third and fourth amended counts are substantially the same as the first and second amended counts.

The fifth amended count alleges that plaintiff was employed by defendant to feed and care for its mules in this mine; that it was the duty of the defendant whenever an unsafe and vicious mule was brought into said mine and placed under plaintiff's charge to inform him of the vicious propensities of said mule; that defendant negligently caused two mules to be brought into said mine and placed in plaintiff's charge; that said mules were unsafe and vicious and would, without provocation, kick and injure persons coming near to them; that such conditions were known to the defendant or should have been known to it, and were unknown to the plaintiff; that while plaintiff was engaged in caring for said mules, exercising due care and caution for his safety, he was kicked by both of said mules and his left leg broken, and otherwise injured.

Carney v. Donk Bros. Coal & Coke Co., 169 Ill. App. 124.

It appears from the record in this case that for about two years prior to January 10, 1909, the appellee was engaged in caring for the mules of appellant that were placed in its stable in the mine; that his duties consisted in part in feeding, watering, currying, harnessing and otherwise caring for such mules as were placed in the stable; that on the day of the injury there were three mules in the stable, one called "Cute," one called "New Mule" and one "Old Stud," together with other mules; that on this day, being Sunday, appellee went to the mine shortly after dinner to go down and feed the mules but the engineer would not permit him to go down because, as he claimed, appellee was in an intoxicated condition and not fit to go down; that he directed appellee to go and return later, which appellee did, and about six o'clock, in company with Fred Rembkee, was let down into the mine to feed the mules; that appellee turned the "Cute" mule loose to get water, and led the other mules to water; that after the mules were placed back in the stable he took a bucket of corn to feed them and went in and fed the "Cute" mule and as he started in to the stall of the "New Mule" it kicked his bucket and kicked him up against the side, and at the same time the mule called "Old Stud," which was standing by the "New Mule," kicked him upon his leg and broke it. The mule called "Old Stud" had several months prior to this been in the mine at work but some three or four months prior thereto had been removed from this mine to another of appellant's mines. It was claimed by appellant that the mule was moved because appellant had put a motor in their mine and had no use for all of the mules, and that several mules at that time were moved out to another mine.

On the other hand, it is claimed by appellee that this mule "Old Stud" was a kicking mule and that a committee of drivers waited upon the mine manager and demanded that this and other mules be taken out of the mine. The mine manager claims that the mule that

they demanded to be taken out of the mine was named "Bob," and that he never heard a complaint about this mule "Old Stud;" but says they had a strike on hands and to settle the strike they had to take three or four away. I know "Bob" was a mule that was taken away, "Old Stud" and "Old Sailor," and that there were three or five mules objected to after several days. Witnesses for appellee testified that the mine manager was advised that "Old Stud" was a kicking mule. In fact, there was sharp conflict in the testimony upon the question as to whether or not the mine manager had knowledge of the fact that "Old Stud" was a kicking mule, and that he was removed from the mine on that account. The evidence tends to show that several months after these mules had been removed from the mine, and in about the month of December, 1908, "Old Stud" was brought back to the mine and the "New Mule" placed in the mine at about the same time, and placed in appellee's care; but appellee denies that he knew that the mule brought back to the mine was "Old Stud;" that he had been sheared in part and so changed that he did not know him; that he looked something like him, and he heard some of the drivers say that it was "Old Stud," and that he inquired of the boss driver if this mule that was brought back to the mine was "Old Stud" and the boss driver told him it was not, but told him it was a mule brought there from the lead works. The testimony upon the question as to whether or not appellee knew this mule, when he was brought back to the mine, was quite conflicting. While appellee admits that he knew the disposition of "Old Stud" to kick, denies that he knew this was "Old Stud." If it is true that appellee knew the disposition of "Old Stud" to kick before its removal from defendant's mine, and appellant also knew of such disposition, and in a few months returned "Old Stud" back to the mine, and when suspicions were aroused among the drivers that it was "Old Stud,"and the manager as-

sured the men and appellee that it was not the mule, and that this was a mule brought from the lead works, and thereby deceived the appellee, then we do not think it can be said that he assumed the risk of being kicked by ''Old Stud.'' We think that all of these matters were questions of fact to be determined by the jury, and we can see nothing in the evidence by which we can say that the verdict of the jury is manifestly against the weight of the evidence.

Counsel for appellant claim that before one can recover on account of the vice of an animal it must be shown that the master knew that the animal had the propensity to commit that particular vice. If he means by that, that the mule must be shown to have the propensity to kick then we agree with him in his proposition, but if he means by it that the mule must be shown to have the propensity to kick while in the stable only, then we think his position is not in harmony with the rule laid down by our Supreme Court. In the case of Manufacturers' Fuel Co. v. White, 228 Ill. 187, the court says: ''Instructions given did not require that the jury find, as a necessary element of plaintiff's cause of action, that the animal had a vicious and dangerous propensity to kick mankind, and it is urged that a propensity to kick, which was merely an evidence of ill-temper and not the result of a desire to injure a human being, is not sufficient to establish the liability of the master, the owner of the animal, even where he has knowledge of its propensity and where the servant injured has no such knowledge and is not chargeable with such knowledge. * * * On reason we are unable to perceive any distinction between directing the use of an animal that is dangerous on account of its peculiar inclination to kick under certain circumstances, even though its efforts in that regard be not particularly directed against mankind, and directing the use of an instrumentality or appliance of a mechanical nature which is dangerous to the servant.'' In other words it

is sufficient to show that the disposition of the mule was to kick, and need not be confined to a particular circumstance of its kicking, making the real question whether or not it had a propensity to kick. There was evidence tending to show that the "New Mule" had kicked one time while at work; that the manager was advised of this, and was also advised that this "New Mule" was liable to be a kicking mule; but the injury in this case seems to have been inflicted by a kick from the mule "Old Stud," and we do not regard it as very material whether the master was advised of the kicking propensity of the "New Mule" or not.

Appellant claims that the court erred in refusing some of its instructions, and the first one complained of is quoted on page 29 of their brief, which states, "The Court instructs the jury that if you believe from the evidence that the plaintiff was kicked by the mule known as Old Stud mule, and that the plaintiff himself before that time knew that this mule had the propensity or inclination to kick, then he assumed whatever risks there were of being kicked in handling or working with this mule and cannot recover in this case under such facts, and you should find the defendant not guilty." We think this instruction was misleading, in this, appellee did not deny but what he knew of the kicking propensities of the mule called "Old Stud" but he did deny that he knew this was the same mule, and we think the instruction was vicious in not recognizing that feature of appellee's contention. This instruction also should have been confined to the first and second counts which were directed to the "Old Stud" mule.

Complaint is also made of the refusal of the court to give the following instruction:

"The court instructs the jury that if you believe from the evidence in this case that the plaintiff was a mule feeder in defendant's mine, and that as such he had charge of all the mules in defendant's mine, including the mules mentioned in plaintiff's declaration, and that

he had equal opportunity with the defendant to know or learn of any vicious habits of such mules, or their propensities to kick, if they had such propensities, then in law he assumed whatever risks there was on account of its conditions and would not be entitled to recover, if you believe from the evidence he did have such opportunity.''

The principle involved in this instruction was fully given in defendant's instruction No. 9, as shown by page 63 of the abstract.

The appellant also complains of the refusal of the court to give the following instruction:

''The court instructs the jury that if you believe from the evidence in this case that the plaintiff at the time the mule called Old Stud was returned into defendant's mine in 1908, knew that he was the same mule that had formerly been in said mine or that by the exercise of ordinary care he could have known, or that he had equal opportunity with the defendant of discovering such fact then the plaintiff is not entitled to recover in this case and you should by your verdict find the defendant not guilty.''

We think the court properly refused this instruction as it is applicable to but two counts of the declaration and not to the others. It ignores the plaintiff's knowledge as to the disposition of this mule to kick and caused the whole case to turn upon the question of the knowledge of the plaintiff as to the return of the mule, eliminating all other questions and yet directs a verdict. We think the court ruled properly upon this instruction.

While it is true that the evidence in this case in some of its features is not very clear and convincing, as appears from the record, yet the evidence of appellee standing alone would be sufficient to warrant a jury in finding the issues in his favor, and the testimony being quite conflicting as to much of the testimony in the case, they were matters, in our judgment, to be settled by the jury, and we cannot say that the verdict of the

jury is manifestly against the weight of the evidence, and the judgment of the Circuit Court is affirmed.

*Judgment affirmed.*